1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CAMERON SHEPHERD,                         No. 2:15-cv-1894 KJN P

                    Plaintiff,
12

13        v.                                   ORDER AND FINDINGS AND
                                               RECOMMENDATIONS
14   CALIFORNIA FORENSIC MEDICAL
     GROUP, INC., et al.,
15
                    Defendants.
16

17   I.  Introduction

18          Plaintiff is a state prisoner, proceeding without counsel.  Plaintiff raises Eighth

19   Amendment claims against defendants California Forensic Medical Group ("CFMG"), R.N. Tami

20   Owens, Dr. Tomkiw, and Nurse Practitioner Lily Chan.  Defendants' motion for summary

21   judgment is before the court.  As set forth more fully below, the undersigned concludes that

22   defendants' motion for summary judgment should be partially granted.

23   II.  Plaintiff's Amended Complaint

24          In his verified amended complaint (ECF No. 11), plaintiff alleges the following:

25          Defendant CFMG is the medical provider for the Yolo County Jail, contracted by the state

26   to provide medical care to jail inmates.  CFMG has a policy to not provide inmates with

27   expensive antibiotics to treat MRSA infections, or to provide outside medical care, if the inmate is

28

                                            1

a California Department of Corrections and Rehabilitation ("CDCR") inmate.

While out to court at the Yolo County Jail, plaintiff sustained an infection from an unsanitary wheelchair, initially misdiagnosed as a spider bite. Due to defendants' deliberate indifference, the staph infection turned into a MRSA infection, partially due to the failure of defendant R.N. Owens and Nurse Practitioner Chan to provide him a medical chrono for additional boxers and towels, but also due to defendants' refusal to provide the antibiotics required to treat the infection based solely on the expense. Plaintiff claims the MRSA infection spread to other body parts, causing plaintiff pain, and subjecting him to further risk of serious harm including bone infection, amputation, or death. Plaintiff contends that defendants refused to provide him the needed antibiotics for a period of ninety days.

III. Defendants' Motion for Summary Judgment

Defendants move for summary judgment on the grounds that plaintiff's areas of small lesions or reddened skin (erythema) were treated appropriately by medical staff at the jail, and such treatment was within the standard of care for such infections. Defendants contend that their expert evidence that plaintiff was treated within the community standard of care entitles each of them to summary judgment absent plaintiff's rebuttal by conflicting expert evidence, relying on Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1987). (ECF No. 36 at 11.) Defendants argue that plaintiff's condition was not ignored; rather, medical records demonstrate that plaintiff received ongoing wound care, antibiotics and cleansing agents, consistent with the standard of care for such skin infections and reddened areas. (ECF No. 36 at 12.) Defendants contend that because their treatment complied with the standard of care, such care was not negligent, and plaintiff cannot transform his claim into an Eighth Amendment violation simply because he has a difference of opinion as to the care he should have received. (ECF No. 36 at 14.)

In support of their motion, defendants provide the declaration of Dr. John Levin, a medical doctor board-certified in emergency medicine since 1991, and experienced in the care, treatment, and clinical diagnosis of infective processes including infections caused by bacteria such as Staph Aureus and a staph bacterium referred to as "MRSA" (Menthicillin Resistant Staph Aureus), because that bacterium is resistant to many types of antibiotics. (ECF No. 36-2 at 1-2.)

## Verified Opposition

Plaintiff filed a verified opposition[1] and declaration.  (ECF No. 38.)  Plaintiff is 37 years old and has never before had a staph or MRSA infection until he was under CFMG care, and claims he will now have MRSA for the rest of his life.  Because the first staph infection was not properly treated, he maintains he was allowed to "catch" MRSA, and because subsequent treatments were improper, he "caught 11 more infections in a 10 month span."  (ECF No. 38 at 14.)  Defendants were allegedly deliberately indifferent because they did not provide plaintiff with clean boxers and towels every day he had an open wound and infections draining contaminated blood and puss, which stained his boxers and towels.  Despite continuous complaints through grievances and letters, plaintiff did not receive clean towels or boxers on a daily basis.  (ECF No. 38 at 3-4.)  Plaintiff concedes that he "got daily wound care and a fresh band-aid," but claims that the yellow blood and puss continued to seep out the side of the new band aid daily.  (ECF No. 38 at 4.)  Despite writing two grievances to defendant Owens, plaintiff did not receive the medical chrono throughout his 12 infections.  (ECF No. 38 at 5.)  After plaintiff was returned to CDCR custody on December 24, 2015, he has had only one MRSA infection, on January 20, 2016.  (ECF No. 38 at 14.)

Plaintiff submits grievances he alleges will show that defendant Owens lied to plaintiff because after filing two grievances, plaintiff never received the medical chrono throughout the 12 infections plaintiff suffered.  (ECF No. 38 at 5, & Ex. C.)  Plaintiff also provides copies of all the grievances he wrote to defendant Owens regarding the cruel treatment plaintiff received.  Plaintiff also provides lab reports which show the names of defendants Chan and Dr. Tomkiw; plaintiff argues this shows each was aware of each infection, and demonstrates each infection was an open wound because otherwise no sample could be obtained for culture by the lab.  (ECF No. 38 at 6, citing Ex. G.)

////

[1] In his opposition, plaintiff also addresses an alleged denial of dental treatment for over a year.  (ECF No. 38 at 9-11.)  However, plaintiff's amended complaint did not include any allegations concerning dental care and therefore such allegations are not properly at issue here.

Defendants' Reply

2    In reply, defendants argue that plaintiff's personal assessment of the nature of

3    staphylococcal bacterial infections diagnosed and treated at the Yolo County Jail, as well as his

4    personal conclusions as to the proper treatment are insufficient to demonstrate that a material

5    dispute of fact exists that plaintiff's treatment at the jail met the community standard of care, as

6    confirmed by Dr. John Levin.  Defendants contend that plaintiff's overreaction to his diagnosis of

7    MRSA is medically unsupported and, as Dr. Levin opined, such skin infections are typically

8    amenable to treatment by incision and drainage, or by compresses with adjunctive antibiotic

9    treatment as were provided to plaintiff by jail medical staff.  (ECF No. 39 at 2, citing Levin Decl.

10   at 3:2-7.)  Despite plaintiff's characterization of his infection as "incurable," Dr. Levin notes that

11   such organisms can be present on any given patient, typically in the nasal passages, and not cause

12   any problems.  (ECF No. 39 at 3.)  Dr. Levin explained the purpose of the compresses and topical

13   antibacterial medication and cleansers was to cause the lesion or boil to open so that the

14   medication could work.  (Id., citing Levin Decl. at 2:8-12.)  Dr. Levin opined that plaintiff did not

15   suffer from a "systemic" blood borne bacterial infection that would require the use of more

16   powerful antibiotics not indicated in the care and treatment of the skin lesions or boils presented

17   by plaintiff while housed in the jail.  (Id., citing Levin Decl. at 2:12-19.)

18   IV.  Legal Standard for Summary Judgment

19   Summary judgment is appropriate when it is demonstrated that the standard set forth in

20   Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

21   movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

22   judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]the moving party always bears the

23   initial responsibility of informing the district court of the basis for its motion, and identifying

24   those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

25   together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue

26   of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered

27   Fed. R. Civ. P. 56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving

28   party need only prove that there is an absence of evidence to support the non-moving party's

case." <u>Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)</u>, 627 F.3d 376, 387 (9th Cir. 2010) (citing <u>Celotex Corp.</u>, 477 U.S. at 325); <u>see also</u> Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Celotex Corp.</u>, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. <u>See</u> Fed. R. Civ. P. 56(c); <u>Matsushita</u>, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, <u>see</u> <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987), <u>overruled in part on other grounds</u>, <u>Hollinger v. Titan Capital Corp.</u>, 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce

the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on January 2, 2017 (ECF No. 36), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

V. Facts[2]

   1. Proper and effective treatment of skin infections caused by MRSA as seen in sores or boils can be implemented with warm compresses in conjunction with cleansing solutions such as Hibiclens and antibacterial medications such as Bactrim.

   2. The March 2015 report of a reddening of the right buttocks and a 3x2 cm (or 1.18 inch

---

[2] For purposes of the pending motion, the following facts are found undisputed, unless otherwise indicated. Documents submitted as exhibits are considered to the extent that they are relevant, and despite the fact that they are not authenticated because such documents could be admissible at trial if authenticated.

x .79 inch) area of localized erythematous[3] tissue on examination of plaintiff in March of 2015 was determined to be a staph infection.

3. The staph infection identified in March of 2015 was consistent with a mild infection that was amenable to treatment and resolved with the antibiotics prescribed, Rocephin and Bactrim, in conjunction with the wound care ordered by defendant Chan.

4. On April 10, 2015, in response to plaintiff's complaint that he had not received an extra set of boxer underwear or an extra towel, plaintiff was receiving daily wound care and dressing changes and was properly advised that the fact that the area was covered with a bandage was sufficient to protect the area from contamination and that plaintiff should wash his hands after touching the dressing.

5. In May of 2015, a small lesion on plaintiff's right buttocks was identified by the jail physician and warm compresses were ordered twice a day to bring the area to a head and for cultures to be taken of any drainage resulting from the compresses.

6. In June of 2015, a new abscess on plaintiff's left buttocks was reported by plaintiff and on June 9, 2015, Dr. Tomkiw ordered treatment with Hibiclens in the affected area and Bactoban for prophylactic treatment of any infective process in plaintiff's nasal passages.

7. On June 10, 2015, the area of two small lesions on plaintiff's left buttocks were palpated and a diagram entered into the chart. There was "slight erythema" but no open wound. (CFMG 0171.)[4] Plaintiff was instructed about the topical application of prophylactic medications. Plaintiff was given four large band aids to use if a lesion opened, and was directed to call for wound care. (ECF No. 36-2 at 5, ¶F; CFMG 0171.)

8. On July 20, 2015, a small lesion, less than 1/2 cm (or 0.195 inch) was noted on plaintiff's left buttocks, along with a red pimple with white head but no drainage; warm compresses were ordered. (ECF No. 36-2 at 5, ¶G; CFMG 0167; 0298, 0299, 0307, 0310, 0336, 0339.)

---

[3] Erythematous means reddened, characterized by erythema, an "[i]nflammatory redness of the skin." Stedman's Medical Dictionary 533 (25th ed. 1990).

[4] Citations to CFMG page numbers refer to defendants' CFMG Bate-stamped numbers.

9.  On September 15, 2015, plaintiff complained of a lesion on his right upper buttocks and a 2 cm (or 0.79 inch) area of erythema was identified followed by an order for heat packs, wound care, and a culture if drainage was produced.  Bactrim and chlorhexidrine (Hibiclens) were ordered.

10.  On October 16, 2015, wound checks were ordered and Bactrim, heat packs, and Hibiclens were also ordered.

11.  The Wound Care Flow Sheets completed for plaintiff reflect that he suffered wound drainage on the following dates:

March 4, 2015 (scant); March 5, 2015 (small); March 6, 2015 (amount not noted, but was cultured); March 7, 8, & 9, 2015 (moderate); March 11, 2015 (small); March 12-19 (scant); March 20-21, 2015 (small); March 22-25, 2015 (scant).  (CFMG 460, 461, 455, 447.)

April 14, 2015 (scant) (CFMG 0421.)

May 15 & 17, 2015 (scant) (CFMG 0393.)

Sept. 15, 2015 (small, moderate); Sept. 16, 2015 (moderate); Sept. 17-18, 2015 (scant) (CFMG 0272.)

Oct. 28, 2015 (small, moderate); Oct. 29, 2015 - Nov. 1, 2015 (small); Nov. 2, 2015 (scant, small) (CFMG 0218.)

VI.  Eighth Amendment Claims

A.  Legal Standards

The Eighth Amendment protects prisoners from inhumane methods of punishment and inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).  Extreme deprivations are required to make out a conditions-of-confinement claim, and "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."  Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citation omitted).  "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety."  Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (citations omitted).  "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a

constitutional violation has occurred." Id. "The more basic the need, the shorter the time it can be withheld." Id. (citations omitted).

To prevail on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must show that: (1) he had a serious medical need; and (2) the defendant's response to the need was deliberately indifferent. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); see also Estelle v. Gamble, 429 U.S. 97, 106 (1976).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting Estelle, 429 U.S. at 104), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." McGuckin, 974 F.2d at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. See Farmer, 511 U.S. at 834. For a prison official's response to a serious medical need to be deliberately indifferent, the official must "'know[ ] of and disregard[ ] an excessive risk to inmate health.'" Peralta v. Dillard, 744 F.3d 1076, 1082 (9th Cir. 2014) (en banc) (quoting Farmer, 511 U.S. at 837). In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in

9

diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."). This rule applies whether the difference is between the medical professional(s) and a prisoner or two or more medical professionals. Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016) (citation omitted). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835.

B. Discussion

1. Serious Medical Needs

Here, defendants do not dispute (ECF No. 36 at 10), and the undersigned finds, that plaintiff's skin infections constitute a serious medical need. See, e.g., Sansome v. Lopez, 2013 WL 3198594, at *4 (E.D. Cal. June 21, 2013) (finding prisoner's claims of having developed "(staph) MRSA infections" to be serious medical needs because "an infection, if not properly treated, could result in further significant injury or the unnecessary and wanton infliction of pain.") (internal quotation marks and citations omitted).

2. Deliberate Indifference

Thus, the court turns to whether defendants were deliberately indifferent to plaintiff's medical needs in violation of the Eighth Amendment.

a. Failure to Treat with Antibiotics

Plaintiff contends that his Eighth Amendment rights were violated by all of the defendants' refusal to promptly treat his MRSA with antibiotics. Defendants contend that plaintiff merely states a difference of opinion as to his medical treatment, and the medical treatment provided was medically acceptable.

Viewing the evidence in the light most favorable to plaintiff, the court concludes that, at most, plaintiff's claim amounts to a difference of opinion as to his medical treatment, which does not rise to the level of a constitutional violation. "[A] mere difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference." Toguchi, 391 F.3d at 1058 (internal quotes and citation omitted). Rather, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances," and that the defendants

10

"chose this course in conscious disregard of an excessive risk to plaintiff's health."  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Here, Dr. Levin provided his medical opinion that the periodic skin infections plaintiff suffered were "appropriately treated with antibiotics (Bactrim) and cleansing solution (Hibiclens) modalities well within the applicable standard of care for treatment for skin infections caused by 'MRSA.'"  (ECF No. 36-2 at 6.)  Although plaintiff believes he should have been given strong oral or intravenous antibiotics, Dr. Levin opines that the appropriate treatment for MRSA hinges on the location of the infection.  Because plaintiff suffered MRSA infections on the skin, such as sores or boils, rather than a systemic MRSA infection of the blood stream, a post-surgical wound, or a urinary tract infection, the use of such oral or intravenous antibiotics are not indicated.  (ECF No. 36-2 at 2.)  Plaintiff submits no competent medical evidence to the contrary.  Plaintiff may disagree with the treatment provided but that is not enough to find deliberate indifference on the part of defendants.  See Cunningham v. Belleque, 2006 WL 468377, at *3 (D. Or. Feb. 24, 2006) (finding that prison officials' refusal to provide plaintiff with Linezolid to treat his MRSA did not violate Eighth Amendment because plaintiff received timely treatment every time he complained of medical issue, and that plaintiff's disagreement with diagnosis or treatment plan was insufficient to find deliberate indifference); cf. Ramirez v. Dayalan, 2010 WL 3636215, *2 (N.D. Cal. Sept. 14, 2010) ("an MRSA infection on the skin of the type plaintiff suffered may be treated more conservatively with warm soaks and or drainage, or more aggressively with antibiotics") (finding that prison officials had not violated prisoner's Eighth Amendment rights by failing to perform laboratory tests on boils which they suspected were result of MRSA when defendants had taken plaintiff's medical history, evaluated his symptoms, and ordered antibiotics; court noted that antibiotic treatment for MRSA was more aggressive treatment than some doctors would have ordered).

Here, it is undisputed that plaintiff received wound care[5] for his multiple skin infections

_____

[5]  Plaintiff contends that Dr. Levin was lying when he claimed plaintiff's wound was healed on March 16, 2015, and plaintiff points to CFMG 0461, which reflects yellow drainage on March 16, 2015.  However, it appears that Dr. Levin's declaration contains a typographical error, because the exhibit he cites, CFMG 0447, reflects that on March 26, 2015, the wound was clean and

11

which Dr. Levin concludes was well within the standard of care. Plaintiff's lay belief concerning the appropriate treatment for his MRSA skin infections is insufficient to rebut Dr. Levin's medical opinion. The medical care provided to plaintiff at the Yolo County Jail using topical cleansing solutions ("Hibiclens") as well as antibiotics (Bactrim and Rocephin) associated with wound care as needed and wound checks represents medical care in compliance with the applicable standard of care. Plaintiff did not suffer from or sustain any serious MRSA infection where the use of extremely powerful antibiotics was indicated or necessary. Therefore, all defendants are entitled to summary judgment on plaintiff's claim that defendants failed to treat plaintiff's MRSA skin infections with oral or intravenous antibiotics.

### b. CFMG Policy

As noted above, plaintiff contends CFMG has a policy to not provide inmates with expensive antibiotics to treat MRSA infections, or to provide outside medical care, if the inmate is a California Department of Corrections and Rehabilitation inmate. Defendants do not address this policy argument, and do not provide a copy of any policy governing the treatment of MRSA infections, or CDCR inmates, if such policies exist. Rather, defendants argue that they were not deliberately indifferent to plaintiff's serious medical needs because Dr. Levin opined that plaintiff's medical care was appropriate and met the community standard of care.

### i. Legal Standards for Municipal Liability Under Section 1983

Title 42, United States Code, section 1983, provides a private right of action based on proof that a "person," acting under color of state law, committed an act that deprived the plaintiff of a right, privilege, or immunity protected by the Constitution or other federal law. 42 U.S.C. § 1983. Counties and other local governmental entities are "persons" within the meaning of the statute. Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 690 (1978). However, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts

---

healed with no drainage. (ECF No. 36-2 at 4.)

the injury that the government as an entity is responsible under § 1983." <u>Monell</u>, 436 U.S. at 694.

> A plaintiff may . . . establish municipal liability by demonstrating that (1) the constitutional tort was the result of a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority delegated that authority to, or ratified the decision of, a subordinate."

<u>Price v. Sery</u>, 513 F.3d 962, 966 (9th Cir. 2008) (citation and internal quotation marks omitted).

Thus, a plaintiff may establish, under Section 1983, the liability of a local governmental entity by showing that the alleged "constitutional violation resulted from: (1) an employee acting pursuant to an expressly adopted official policy; (2) an employee acting pursuant to a longstanding practice or custom; or (3) an employee acting as a final policymaker." <u>Delia v. City of Rialto</u>, 621 F.3d 1069, 1081-82 (9th Cir. 2010) (as amended).

However, "a municipality cannot be held liable under § 1983 on a respondeat superior theory." <u>Monell</u>, <u>supra</u>, 436 U.S. at 691. "Liability under section 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983." <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). Hence, "[a] supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989) (citing <u>Thompkins v. Belt</u>, 828 F.2d 298, 303-04 (5th Cir. 1987)).

Additionally, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under <u>Monell</u>, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably

more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 (1985) (fns. omitted).

ii. Assumption of Municipal Liability by Private Medical Provider

When a state contracts with a private party to provide medical care to its prisoners, the obligations of the Eighth Amendment attach to the persons with whom the state contracts. West v. Atkins, 487 U.S. 42, 55-56 (1988). As found by the Supreme Court in West:

> Whether a physician is on the state payroll or is paid by contract, the dispositive issue concerns the relationship among the State, the physician, and the prisoner. Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights. The State bore an affirmative obligation to provide adequate medical care to [petitioner]; the State delegated that function to respondent []; and respondent voluntarily assumed that obligation by contract.

Id. at 56 (fn. omitted).

Similarly, employees of a private entity hired by a county to provide medical care to jail inmates thereby act under color of state law, subject to liability under Section 1983. See Ancata v. Prison Health Services, Inc., 769 F.2d 700, 704-06 (11th Cir. 1985) (although county is responsible for providing and paying for the health services of jail inmates, the acts, policies and customs of the jail's delegated medical provider made within the scope of the provider's delegated responsibilities are thereby official acts, policies and customs); see also Howell v. Evans, 922 F.2d 712, 724 (11th Cir. 1991)[1] ("when the state contracts out its medical care of inmates, the obligations of the eighth amendment attach to the persons with whom the state contracts"), citing West v. Atkins, supra, 487 U.S. 42; Hagan v. California Forensic Medical Group et al., 2009 WL 728465, *7 (E.D. Cal. 2009) (J. Karlton) ("CFMG employees have

---

[1] This decision, vacated on other grounds in Howell v. Evans, 922 F.2d 712 (11th Cir. 1991), was subsequently reinstated, see Howell v. Burden, 12 F.3d 190, 191 fn* (11th Cir. 1994).

assumed a public function in providing medical care to inmates on behalf of the County. In performing this function, they are state actors whose conduct is limited by the Eighth Amendment."), citing Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 835-36 (9th Cir. 1999) (identifying several cases which have made the "necessarily fact-bound inquiry" whether private conduct constitutes state action, quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982)); George v. Sonoma County Sheriff's Department, 732 F. Supp. 2d 922, 933-36 (N.D. Cal. 2010) (private physician and private hospital contracting with a public prison system to provide medical treatment for inmates perform a public function actionable under Section 1983), and cases cited therein; Newman v. County of Ventura, 2010 WL 4025618, *5 n.8 (C.D. Cal. 2010) ("private § 1983 defendants" are state actors under the statute if they perform functions traditionally within the exclusive authority of a governmental entity), citing Buckner v. Toro, 116 F.3d 450, 453 (11th Cir. 1997), cert. denied, 522 U.S. 1018 (1997); and Dubbs v. Head Start, Inc., 336 F.3d 1194, 1216 (10th Cir. 2003), cert. denied, 540 U.S. 1179 (2004); see also Hickey By and Through Timalu v. County of Stanislaus, 1996 WL 73371, *3 (9th Cir. 1996) (because a "private corporation [CFMG] providing medical services under contract with the State Department of Corrections cannot be held liable on a theory of respondeat superior," plaintiff must name individual staff members as defendants) (citations omitted); Baker v. County of Sonoma, 2010 WL 1038401, *13 (N.D. Cal. 2010) (assuming without deciding that CFMG employees assume a public function when providing medical care to inmates and are therefore subject to the proscriptions of the Eighth Amendment); Atilano v. County of Butte, 2008 WL 4078809 (E.D. Cal. 2008) (same); Knowles-Browder v. California Forensic Medical Group Staff, 2007 WL 210518 (E.D. Cal. 2007) (same).

                iii.  Deliberate Indifference to Plaintiff's Serious Medical Needs

Plaintiff has demonstrated that his skin infections constitute a serious medical need. Plaintiff must also show that the challenged policy posed an excessive risk to plaintiff's health or safety. See Farmer, 511 U.S. at 837.

////

////

1        iv.  <u>Discussion</u>

2        Here, as noted above, defendants' medical expert Dr. Levin opines that the appropriate

3    treatment for MRSA hinges on the location of the infection.  Although plaintiff believes he

4    should have been given strong oral or intravenous antibiotics, he fails to rebut Dr. Levin's

5    medical opinion that such antibiotics were not required because plaintiff suffered skin infections

6    rather than more serious systemic blood or other medical issues.  Importantly, plaintiff fails to

7    produce a copy of any policy governing the treatment of MRSA infections at the jail or the

8    medical treatment of CDCR inmates at the jail that would counter Dr. Levin's expert opinion.

9    Plaintiff also fails to adduce evidence demonstrating a widespread practice or custom that would

10   rise to the level of a policy concerning such claims.  Indeed, plaintiff wholly fails to address in his

11   opposition the policy arguments he raised in his pleading.  (ECF No. 38, *passim*.)

12       Moreover, plaintiff fails to demonstrate that he required stronger antibiotics or that he

13   required outside medical care for his skin infections while housed at the jail.  Finally, plaintiff

14   also fails to adduce medical expert evidence to rebut Dr. Levin's medical opinion that stronger

15   antibiotics were not required, and that the wound care he received met the community standard of

16   care.  "[A] complete failure of proof concerning an essential element of the nonmoving party's

17   case necessarily renders all other facts immaterial."  <u>Celotex Corp.</u>, 477 U.S. at 323.

18       Thus, CFMG is entitled to summary judgment on plaintiff's policy claims.

19           c.  <u>Misdiagnosis</u>

20       Plaintiff also alleges that defendants misdiagnosed his initial infection as a spider bite

21   rather than caused by an unsanitary wheelchair, and claims that due to this misdiagnosis,

22   defendants improperly treated his initial infection.  (ECF No. 11 at 11.)

23       Before it can be said that a prisoner's civil rights have been abridged, "the indifference to

24   his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical

25   malpractice' will not support this cause of action."  <u>Broughton</u>, 622 F.2d at 460 (citing <u>Estelle</u>,

26   429 U.S. at 105-06.)  A complaint that a physician has been negligent in diagnosing or treating a

27   medical condition does not state a valid claim of medical mistreatment under the Eighth

28   Amendment.  Even gross negligence is insufficient to establish deliberate indifference to serious

16

medical needs.  See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Plaintiff's allegation that defendants misdiagnosed the cause of his initial infection is insufficient to state a cognizable civil rights claim.  Moreover, plaintiff's claim that defendants' improperly treated his initial infection fails in light of Dr. Levin's expert opinion that plaintiff received appropriate medical care for his skin infections.

### d. Failure to Protect Plaintiff by Providing Clean Boxers and Towels

Plaintiff contends that because defendants R.N. Owens and Nurse Practitioner Chan failed to provide him a medical chrono for additional boxers and towels, the MRSA infection spread to other body parts and he continued to suffer skin infections.  Plaintiff provides a copy of an April 14, 2015 email message to defendant Owens from Chief Medical Officer and President of CFMG Dr. Raymond Herr, who references plaintiff and his complaint.  Dr. Herr writes:

> I'm sure you are aware of this inmate and this complaint.  I also assume he now has access to a daily clean towel for his chair as this seems reasonable.  Boxers are a different matter and not clinically indicated.

(ECF No. 38 at 57.)  On April 15, 2015, defendant Owens responded:

> Yes, we are aware of Mr. Shepherd.  He is here for court from CDC.  This inmate has been a chronic issue with two wounds that have since healed.  The treatment has been appropriate.  We did order extra boxers that he did not receive but I did have a conversation with him apologizing and explaining what had happened.  The towel wasn't requested until after the wounds had healed.  He does not have the wheelchair anymore.  This inmate has been deferred to Dr. Tomkiw for care due to his level of difficulty. . . .

(ECF No. 38 at 57.)  In her response to interrogatory no. 4, defendant Owens recalled meeting with plaintiff and responding to a grievance in April 2015 and "indicated that a change for boxer shorts had not been put into the system by a medical staff person at the jail."  (ECF No. 38 at 86.) Plaintiff also provides copies of grievances:

On March 5, 2015, defendant Owens responded that she reviewed plaintiff's complaints with the nurse practitioner and confirmed that extra boxers were ordered.  (ECF No. 38 at 31.)

////

17

On April 9, 2015, plaintiff complained to defendant Owens that he was denied an extra towel because defendant Chan told the laundry officer that plaintiff did not have a chrono. (ECF No. 38 at 32.)

On April 23, 2015, plaintiff complained that because defendant Chan's refusal to write a chrono, plaintiff had to use the same towel 7 days a week for a full month. (ECF No. 38 at 39.) Defendant Owen's response did not address the towel issue. (Id.)

On April 30, 2015, plaintiff again complained he was not provided a chrono for an extra towel and boxers. On May 6, 2015, defendant Owens provided the same response provided on May 11, 2015. (ECF No. 38 at 44.)

On May 5, 2015, plaintiff complained that he did not receive his medical chrono for extra towel and boxers because defendants Owens and Chan forgot to put the chrono in. (ECF No. 38 at 33.) Defendant Owens responded on May 11, 2015, that the extra boxers were ordered on March 5th, but that she spoke with plaintiff on April 1st and explained that the "MTO" was not entered into the computer and that was why plaintiff did not receive the extra boxers. Owens noted that she apologized to plaintiff for not receiving the extra boxers, and plaintiff was encouraged to submit a pink slip to program manager for any further concerns. On April 10, plaintiff was advised by defendant Chan that an extra towel was not medically indicated. (ECF No. 38 at 33.)

In addition, plaintiff wrote a letter on April 9, 2015, stating he was required to use the same towel and boxers five days at a time. (ECF No. 38 at 55.)

Dr. Levin declares that the purpose of incision and drainage is to allow the wound to drain, and states that "the infective material drains out through the skin and is then covered with the appropriate wound dressing materials and observed over time." (ECF No. 36-2 at 2.) Dr. Levin opined that in addressing plaintiff's complaint that he had not received an extra set of boxer underwear or towel on April 10, 2015, defendant Chan examined plaintiff's right calf and recorded an area of firmness about 1 cm with no erythema, and thereafter Chan "appropriately advised" plaintiff "that the fact that the area was covered with a bandage was sufficient to protect from contamination," and plaintiff "was instructed to wash his hands after touching the dressing

and daily wound checks were to be continued." (ECF No. 36-2 at 4.) Otherwise, Dr. Levin does not address the issue of fresh towels or boxers.

A different analysis is triggered by plaintiff's claim that defendants failed to protect him from contracting a MRSA infection. An inmate may state an Eighth Amendment claim premised on the failure of correctional officials to remedy a condition of confinement that poses a substantial risk of harm to a prisoner's future health. Helling v. McKinney, 509 U.S. 25, 33 (1993). It is well accepted that such "substantial risks of harm" include "exposure of inmates to a serious, communicable disease." Id. at 33 (citations omitted). "[T]he risk of contracting MRSA has been specifically identified . . . as the type of condition which may form the basis of a medical indifference claim." Lopez v. McGrath, 2007 WL 1577893, *5 (N.D. Cal. 2007), citing Kimble v. Tennis, 2006 WL 1548950, at *1 (M.D. Pa. 2006), and Cunningham v. Belleque, 2006 WL 468377, at *3 (D. Or. 2006); accord Wooler v. Hickman County, Kentucky, 2008 WL 5412826, *7 (W.D. Ky. 2008) (alleged failure of jail officials to prevent plaintiff's exposure to MRSA infection satisfied objective component of Eighth Amendment claim).

Due to the presence of MRSA in humans' nasal passages, it appears that how plaintiff initially contracted MRSA cannot be determined. However, plaintiff suffered multiple subsequent skin infections, which he argues was due to defendants Owens and Chan refusing plaintiff's request for daily clean towels and boxers on days when he suffered drainage from his wounds. The record reflects multiple days plaintiff suffered wound drainage.

Defendants and their medical expert, Dr. Levin, do not address plaintiff's claims that he was denied daily clean towels and boxers on days he suffered drainage from the bandage. Plaintiff claims that he was only provided band aids, and that the drainage would seep out from the band aid and stain his towel and boxers. Dr. Levin does not address plaintiff's argument that the drainage contaminated plaintiff's towel and boxers and caused plaintiff to suffer recurring skin infections. The records reflect plaintiff suffered from recurring skin infections, indeed, twelve infections over a ten month period, and Dr. Levin does not address the issue of recurrence, and he does not address whether or not plaintiff should have been provided with clean towels or boxers on a daily basis during periods of drainage in order to prevent such recurring infections.

19

The record reflects that plaintiff was issued a chrono for extra boxers on at least one occasion, despite the failure to enter it into the computer, and Dr. Herr thought it was reasonable to provide plaintiff a fresh towel daily.

It may be that defendants can demonstrate that recurrences of such skin infections are common despite proper medical treatment or the failure to provide clean towels or boxers. While Dr. Levin affirmed defendant Chan's instructions on April 10, 2015, that the bandage was sufficient to protect from contamination, plaintiff was not experiencing drainage on April 10, 2015. And although plaintiff was provided four band aids on June 10, 2015, there is no indication he was regularly provided additional band aids or given extra band aids on days he suffered wound drainage.

In addition, although plaintiff was instructed to wash his hands after touching the dressing, Dr. Levin did not address the consequences of drainage staining plaintiff's towel or boxers, or how plaintiff could prevent contamination if not provided daily clean towels or boxers. Defendants make much of Dr. Levin's claim that these kinds of organisms can be present on any given patient, typically in the nasal passages, and not cause any problems. (ECF No. 39 at 3.) But here, the record reflects that plaintiff suffered recurring skin infections while housed in the jail. Plaintiff was provided topical ointment to apply in his nasal passages to "prophylactically stop the spread of MRSA from the nasal passages to other parts of his body." (ECF No. 36-2 at 5.) This fact suggests that the MRSA might spread from the wound if drainage was permitted to stain plaintiff's boxers and towel, and plaintiff could not exchange the stained item for a fresh item each day. But it could also be that the Hibiclens and Bactoban or Bactrim wound care prevented the spread of MRSA through any drainage into plaintiff's boxers or towel. Thus, there is a triable issue of material fact as to whether defendants Chan and Owens failed to protect plaintiff from such recurring infections by failing to provide him clean towels and boxers on days he suffered drainage from his skin infections.[6]

---

[6] In plaintiff's grievances, he continued to request clean boxers and towels, yet defendant Owens repeatedly focused on the single incident where the March 5, 2015 chrono was not entered into the computer. The record reflects multiple skin infections, as well as multiple days where plaintiff's wound had drainage. None of defendant Owens' responses indicate that she

VII.  Conclusion

In light of the above, all defendants are entitled to summary judgment on plaintiff's Eighth Amendment claims with the exception of his Eighth Amendment claim that defendants Owens and Chan failed to provide plaintiff with daily towels and boxers on days when he suffered wound drainage based on their failure to remedy a condition of confinement that poses a substantial risk of harm to plaintiff's future health.

In accordance with the above, IT IS HEREBY ORDERED that the Clerk of the Court is directed to assign a district judge to this case; and

IT IS RECOMMENDED that defendants' motion for summary judgment (ECF No. 36) be partially granted:

1.  Defendants be granted summary judgment on plaintiff's claim that defendants failed to provide oral or intravenous antibiotics in treating his skin infections;

2.  Defendant CFMG be granted summary judgment on plaintiff's policy claims;

3.  Defendants' motion for summary judgment on plaintiff's Eighth Amendment claim that defendants Chan and Owens failed to provide daily clean boxers and shorts on days plaintiff suffered wound drainage be denied; and

4.  This action be remanded for further scheduling on plaintiff's remaining claim against defendants Chan and Owens.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The

////

subsequently entered the chrono or took steps to provide plaintiff with clean boxers or towels once she learned the chrono was not entered.  It is also unclear when plaintiff no longer required a wheelchair, such that he would not require a clean towel on which to sit, or whether there were other ways plaintiff could wipe up and discard the drainage, perhaps by using a paper towel.

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 14, 2017

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/shep1894.msj